IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GOVERNMENT EMPLOYEES INSURANCE COMPANY,

      Plaintiff,

      v.                                                  Civil No.11-CV-00046-WJ-RHS

REBECCA M. ARCHULETA, and
ANTHONY G. ARCHULETA, and
their daughter JANE DOE, a minor,

      Defendants.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**and**
**GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court upon cross-motions for summary judgment: (1) Defendants' Motion for Summary Judgment, filed September 29, 2011 (**Doc. 30**) and Plaintiff Government Employees Insurance Company's ("GEICO's") Motion for Summary Judgment, filed September 29, 2011 (**Doc. 29**).  Having considered the parties' briefs and the applicable law, I find that Defendants' motion is not well-taken and is DENIED, and Plaintiff's motion is well-taken and is granted.[1]

**Background**

This Declaratory Judgment Action arises out of alleged sexual assaults which occurred to Jane Doe, on February 28, 2009, March 20, 2009, and March 25, 2009, by Jason Archuleta (no

---

[1] At times, Plaintiff incorrectly refers to Defendants as "Plaintiff" or "Plaintiffs."  *See, e.g.,* Doc. 7 & 8.  The Court acknowledges that it the parties' positions are somewhat counterintuitive in this case, since the Defendants are actually the Plaintiffs in the underlying case.  However, the Court's references will remain consistent with the parties' positions in the case caption in this federal case.

relation to the Defendants Archuleta) who was a security guard at Espanola High School. Defendants, through counsel, submitted a claim to GEICO alleging that the sexual assaults should be covered by the Archuletas' insurance policy with GEICO, under the uninsured motorist coverage. The parties dispute whether the sexual assaults, if they occurred, are covered by the policy.  The Court has jurisdiction under 28 U.S.C. § 1332.

## I.     Legal Standard

Since both parties have moved for summary judgment, neither party argues that a genuine issue of material fact exists.  Thus, this case turns on a question of law to be decided by the Court.  *See Rummel v. Lexington Ins. Co.*, 123 N.M. 752, 758 (1997) (summary judgment is appropriate where no facts are in dispute, but only the legal significance of the facts).  The parties' filing of cross-motions for summary judgment does not change the usual standard of review.  See  *Burrows v. Cherokee County Sheriff's Officers*, 2005 WL 1185620 (D. Kan. May 18, 2005) (unpublished opinion) (citing *Taft Broadcasting Co. v. U.S.*, 929 F.2d 240, 249 (6th Cir. 1991)).

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 (10th Cir. 1999).  When the parties to an action file cross motions for summary judgment, a court is entitled to assume that no evidence needs to be considered other than that filed by the parties. *Atlantic Richfield Co. v Farm Credit Bank of Wichita*, 226 F.3d 1138 (10th Cir. 2000).  Summary judgment is not appropriate if disputes remain as to material facts.  *Id*.  In this case, the parties have stipulated to certain facts, *see* Court's Scheduling Order,

Doc. 27, which present a sufficient basis on which to grant summary judgment to one of the parties. While some of the facts have been stipulated to only for the purposes of the summary judgment motions, the Court's determination of the issues herein will dispose of the federal case.

## II.     Stipulated Facts

Rebecca M. Archuleta and Anthony G. Archuleta were insured with GEICO under policy number 0591-72-17-09, which insured the Archuletas and Jane Doe for the policy period of November 26, 2008 to May 26, 2009. In pertinent part, that policy provided uninsured motorist coverage.

In February and March of 2009, Jane Doe got into a vehicle with Jason Archuleta, a security guard at her high school on three occasions and was sexually penetrated by him. Jason Archuleta drove Jane Doe several miles away from her home to an isolated area off State Road 68, near the Village of Alcalde. Following the assault, Jason Archuleta drove Jane Doe home.

At the time Jane Doe allegedly entered the vehicle, she was fifteen (15) years of age, and Jason Archuleta was twenty-one (21) years of age. Jane Doe was legally incapable of granting consent under the laws of the state of New Mexico. Jason Archuleta did not have automobile liability insurance, and therefore, was uninsured. Given the age difference, the sexual penetration would be considered a second, or fourth degree felony pursuant to N.M.S.A. 1978 § 30-9-11 (e) or (g). As a result of the alleged sexual penetration, Jane Doe sustained a bodily injury and was in an "accident" under the GEICO policy.

The policy provision at issue here provides as follows:

> **LOSSES WE PAY**
> Under this coverage, we will pay damages for *bodily injury* and *property damage* caused by accident which the *insured* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle*, or *underinsured motor vehicle* or a *hit-and-run motor* vehicle arising out of the ownership, maintenance or use of

that motor vehicle.

(emphasis supplied in the original).  The parties stipulate that as a result of the alleged sexual penetration, Jane Doe sustained a bodily injury and was in an "accident" under the GEICO policy.[2]  The sole issue for the Court to decide is whether, under the policy provision, the sexual assault suffered by Jane Doe "arises from the ownership, maintenance or use" of Jason Archuleta's vehicle.  Plaintiff maintains that there is no coverage for the alleged sexual assaults, and—in the event that the Court determines that coverage exists— that there is only one occurrence under the policy.  Defendants contend that the assault fits into the policy's coverage provision, based on case law interpreting the language of the policy provision.

## Discussion

In determining whether intentional conduct and resulting harm arises out of use of an uninsured vehicle, and thus is potentially compensable under uninsured (UM) policy, a court should consider: (1) whether there is sufficient causal nexus between use of the uninsured vehicle and resulting harm; (2) whether an act of independent significance broke the causal link between the use of vehicle and the harm suffered; and (3) whether the use to which vehicle was put was normal use of the vehicle.  *Britt v. Phoenix Indem. Ins. Co*., 120 N.M. 813, 907 P.2d 994 (N.M.,1995).

**I.   Causal Nexus**

The causal nexus is something less than proximate cause but something more than the

---

[2]  The parties have agreed that, should the Court not grant summary judgment given the stipulated facts, "the parties reserve their rights to contest whether Jane Doe was ever in the vehicle of Jason Archuleta; whether sexual intercourse occurred between Jane Doe and Jason Archuleta; whether Jane Doe sustained any bodily injury; or whether any accident occurred."  Doc. 27 at 3.

vehicle being the mere situs of the injury.  *Continental Western Insurance Company v. Klug*, 415 N.W.2d 876, 878 (1987).  The vehicle must be an "active accessory" in causing the injury. *Britt v. Phoenix Idem. Ins. Co.*, 120 N.M. at 818, 907 P.2d at 999.

Defendants point to several New Mexico cases holding that coverage existed where the vehicles in question were found to have facilitated the crime.   In *Barncastle v. American Nat'l Prop. & Cas. Cos.*, 129 N.M. 672, 674, 11 P.2d 1234, 1236 (Ct.App. 2000), the New Mexico Court of Appeals held that an assailant's vehicle was an active accessory where the driver of the vehicle used it to get into a position where the assailant could assault Plaintiff and the vehicle was further used to escape the scene and detection.  In *Barncastle*, an unidentified vehicle pulled up next to Plaintiff and an unidentified passenger exited the vehicle, walked over, and shot plaintiff.  The court concluded that the uninsured motorist policies covered the assault because the *Britt* test was satisfied.   The court found that the vehicle was an "integral element of the . . . shooting."  *Barncastle*, 129 N.M. 674, 11 P.2d at 1236 (citing *State Farm Mut. Automobile Ins. Co. vi Blystra*, 86 F.3d 1007 (10th Cir. 1996)).  In these cases, the court reasoned that the vehicle facilitated the crime, concealed the driver and assailant from the victim, and allowed the driver and assailant to flee the scene.  *See, id*.

Defendants also cite to *Miera v. State Farm Mut. Auto. Ins. Co*., in which the New Mexico Court of Appeals reversed summary judgment for the insurer.  135 N.M. 574, 577, 92 P.3d 20, 23 (N.M.App.,2004).  In *Miera*, the vehicle was used to approach and create a situation where the occupant assailant could approach and attack the victim.  The assailant vehicle was on its way to a party when the occupants became embroiled in some level of gesturing with the occupants of another vehicle.  After the vehicles came to a stop, the assailant shot the plaintiff with the driver's gun.    The court concluded that the assailant's car "amounted to little more

5

than a holster on wheels" and that the car was used to maneuver to a point "that accelerated the confrontation. . . ." *Miera*, 135 N.M. at 577, 92 P.3d at 23.[3]

Defendants contend that the instant case poses the same kind of situation, rather graphically referring to Mr. Archuleta's car as a "penis on wheels" to compare it to the vehicles in *Barncastle* and *Miera*, and to analogize to the court's reference to the car in *Miera* as a "holster on wheels." *See* 135 N.M. at 577, 92 P.3d at 23. The problem with the cases cited by Defendants is that they are not sufficiently analogous to the facts in this case to apply the same analysis and come to the same conclusion. These cases can be fairly characterized as "road rage" cases, where the assailant used the car to transport him closer to the target. In these examples, the vehicle was clearly an "active accessory" in causing the injury.

Plaintiff, however, discusses two cases not mentioned by Defendants, which are relevant because they both apply the New Mexico *Britt* standard, found that coverage did *not* exist, and at the same time, provide some guidance for cases involving sexual assaults: (1) *Hartford v. Tollardo Ins. Co. v. Tollardo,* 409 F.Supp.2d 1301 (D.N.M. 2005) ("*Tollardo"*) and (2) *Farmers Ins. Co. Of Arizona v. Sedillo*, 129 N.M. 674, 11 P.3d 1236 (Ct.App. 2000) ("*Sedillo"*).

*Sedillo* was written by Judge Jonathan Sutin of the New Mexico Court of Appeals on the same day as its companion case, *Barncastle*. In *Sedillo*, the uninsured assailant vehicle drove close to and nearly struck Mr. Sedillo's young daughter while they were tailgating at the

---

[3] Summary judgment for the insurer was reversed, however, because a factual dispute existed: whether the vehicle was used to approach and create a situation where the assailant could approach and attack the victim. There were also other questions for the fact finder to resolve: whether the owner/driver of the vehicle was legally responsible for the shooting of the victim because it was the driver's gun, but the occupant who did the shooting. In other words, it was not clear whether an act of independent significant broke the causal link between the use of the assailing car and the shooting. Another question was whether the vehicle was put to its "normal use."

University of New Mexico, then parked nearby the Sedillo family.  Mr. Sedillo immediately approached the vehicle, and an altercation broke out in which he was badly beaten.  Judge Sutin concluded that "the truck was not an 'active accessory' in the assault" because while use of the vehicle was a precipitating event in that it nearly struck the young girl, nevertheless, its use as a transportation device was not involved in the commission of the tortious conduct.  Judge Sutin distinguished the case from *Barncastle*, in which the driver "used the vehicle to get into a position where the assailant could get out and shoot Barncastle."  *Barncastle*, 129 N.M. at 674.

In *Tollardo*, United States District Judge James Browning wrote an in-depth discussion of the "active accessory" prong of the *Britt* test, noting that the use of the vehicle must play an active role in the commission of the tortious conduct.  That case involved the killing of a gang leader, Tollardo, by Perea, a rival drug dealer.  Following a week-long series of conflicts between the two, Perea used his uninsured pick-up truck to search for Tollardo, and finally spotted Tollardo's vehicle, parked in a gas station.  After stopping his truck, Perea approached the vehicle Tollardo was in, on foot, bringing with him guns he had brought to the scene.  Perea opened fire on the vehicle, killing three of the four occupants.  Judge Browning found that a causal nexus did not exist between Perea's use of his uninsured truck and the shooting deaths of the three victims in the insured vehicle.  Thus, the uninsured truck was not an active accessory to those crimes and there was no coverage under uninsured motorist provision.   As a result, Judge Browning concluded that was no uninsured motorist coverage for the incident.

I find *Tollardo* particularly helpful because, in his analysis, Judge Browning relied on case law from Minnesota appellate courts which apply a standing identical to the *Britt* standard, and which have ruled that using a vehicle for transportation to and from the scene of a crime does not turn the vehicle into an "active accessory."  409 F.Supp. 2d at 1310.  Judge Browning's

7

nod to Minnesota law is particularly relevant here because one of the Minnesota cases, *Edwards v. State Farm Mutual* (*"Edwards"*) involves a sexual assault, and contains facts similar to the instant case, and yet the *Edwards* court found that coverage did not exist. 399 N.W.2d 95 (Minn.Ct.App. 1986).

Defendants make much of the fact that Archuleta used the car for more than transportation; specifically, to entice the victim, to conceal his identity during the assault, and then to use the vehicle as the place for the assault. These facts are still insufficient to form a causal connection under *Britt*. The assault in *Edwards* also took place in the vehicle, yet the Minnesota Court of Appeals found that fact to be insignificant, concluding that there was an insufficient causal connection between the assailant's use of his vehicle and the victim's injuries to invoke coverage under the victim's automobile insurance policy:

> The physical injuries Ture inflicted upon Diane Edwards were devastating and tragic, but they were not related to Ture's "use" of his motor vehicle. Ture could have accomplished the same end without the use of a motor vehicle. . . . **The fact that the injuries were inflicted in the vehicle cannot by itself elevate the vehicle to the status of an active accessory to the injuries** sustained by Diane Edwards.

399 N.W.2d at 98 (emphasis added).[4] The Colorado Court of Appeals came to a similar conclusion in *State Farm Mut. Auto. Ins. Co. v. Kastner*, on facts nearly identical to the instant case. The victim in *Kastner* was taken in her own car to a remote location and was sexually assaulted in the vehicle. 77 P.3d 1256, 1266 (Colo.,2003). The court found that the victim's injury was not causally connected to the use of the vehicle, noting that the "seat belt and the

---

[4] The Court relies on Minnesota law here because of its similarity to New Mexico law in the applicable standard for coverage, as noted by Judge Browning in his analysis in *Tollardo*. Also, Defendants have not offered any New Mexico cases that involve sexual assaults as the tortious conduct.

reclining seat served as accessories to the crime, merely assisting the assailant in a way that incidental objects or furnishings inside a house could have helped him without actually causing the assault." *Id* at 1265.

Defendants' contention that Archuleta's vehicle was an "active accessory" in the assault does not align with the reasoning in these cases, nor with the *Britt* prong regarding causation. *Britt* defines the causation standard for recovery under an uninsured motorist policy as "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury." *Britt*, 120 N.M. at 817; *Continental Western Ins. Co. v. Klug*, 415 N.W.2d 876 (Minn.,1987). It is enough if "the injury is a natural and reasonable incident or consequence of the use of the vehicle." *Tlougan v. Auto-Owners Insurance Co.*, 310 N.W.2d 116, 117 (Minn.1981).[5] Defendants contend that New Mexico espouses a "liberal view favoring coverage,"*see* Doc. 30 at 7, but the Court must base its conclusion on the *Britt* standard and case law which has applied this standard. The Court agrees with Plaintiff's position that a vehicle is not an active accessory in sexual assault cases because other than transporting the victim, Jason Archuleta's car was little more than the "mere situs" of the injury. This is not enough to satisfy the *Britt* causation prong. As Plaintiff notes, the victim here could have been taken into the woods, or into an apartment, for the commission of the assault. *See* Doc. 32 at 6. Thus, Defendants fail to satisfy this prong of the *Britt* inquiry. On this failure alone, the Court could grant summary judgment to Plaintiff. However, in an abundance of caution, I address the other prongs.

---

[5] Defendants also cite to *Klug* for this causation definition, but overlook that the facts in *Klug* are distinguishable from this case. In that case, the court reversed the district court's entry of summary judgment for the insurer. In that case, the victim was shot by the driver of another vehicle—a fellow worker—while both were driving on the highway. The court based its conclusion on the findings that the assailant used his car for motoring purposes, and in order to maneuver the car alongside Klug to assault him.

## II. Act of Independent Significance

Defendants contend that in cases where an assailant remains in the car, courts have held that there is no independent act. The Court does not find any support for this as a general statement of the law. In fact, the court in *Klug* (which is the case cited by Defendants for this proposition), said no such thing. Rather, the court found that, based on the specific facts of the case, the shooter's actions of driving and shooting "were inextricably linked." 415 N.M.2d at 878 ("*Under the circumstances of this case*, however, we hold that the causal link between Klug's injuries and the use of the car was not broken.") (emphasis added).[6]

Defendants also cite to another case, *State Farm Mut. Auto. Ins. Co. v. Blystra,* to argue that the commission of an intentional tort does not constitute an act of independent significance sufficient to break the causal link between an assailant's use of his vehicle and the victim's injury. 86 F.3d 1007, 1013 (10th Cir. 1996). However, *Blystra* actually states that the commission of an intentional tort *alone* is not enough to break the causal link. The general proposition advanced by Defendants does not fit all fact scenarios, particularly when the relevant case law addressing sexual assaults in the context of uninsured motorist coverage have found that the violent act of sexual assault breaks the causal chain:

> Ture's violent acts constituted "events of independent significance which broke the causal link between the 'use' of the vehicle and the injuries inflicted." . . . He did not require a vehicle to inflict those injuries. Diane Edwards' injuries were the result of Ture's violent actions and not the result of the use of his vehicle. . . . The vehicle used by Ture was the situs of his offenses. There was no element of those offenses against Edwards which required use of an automobile or involved risks associated with motoring.

*Edwards*, 399 N.W.2d at 98-99. Accordingly, I find that Archuleta's assault on Jane Doe is not sufficiently contemporaneous or intertwined with the use of a vehicle to form a causal connection to Jane Doe's injuries.

---

[6] *See* note 5, above.

### III.     "Normal Use" of Vehicle

Defendants argue that Archuleta's vehicle was put to its "normal" use because Archuleta not only used the car to entice and transport Jane Doe, as well as to assault her.  As discussed above, using the car to transportation is not sufficient to establish either causation or "normal use" under the *Britt* test.  Defendants entreat the Court to consider the "provocative . . . history of the automobile."  They argue that social references to "lovers' lane" and "getting to know each other in the back seat" form a basis for considering  sexual encounters to be a "normal use" of a car.   While this argument is creative, it is not supported by any reading of case law addressing uninsured motorist coverage in the context of intentional torts, and goes way beyond what courts have considered to be a "normal use" of a vehicle.

The normal use of a vehicle means transportation.[7]  Thus, the pertinent question is whether Jason Archuleta needed the vehicle for the assault.  Using the car to drive Jane Doe to a place where he could assault her "no more connects the car to the assault than if the assailant had used the car as the mere situs of the assault without moving it." *Kastner*, 77 P. 3d 1256, 1266 (Colo. 2003).   As Plaintiff has noted, Jane Doe's injuries are not connected to the "normal use" of Jason Archuleta's car; Archuleta could have taken the victim into the woods or into his apartment in order to commit the assault.  The car's ability to transport—the "normal use" of a vehicle—had no part in causing Jane Doe's injuries because Archuleta did not require a vehicle to inflict those injuries.  *Cmp*. *Edwards*, 399 N.W.2d at 98 (noting that victim's injuries were the result of assailant's "violent actions" and "not the result of the use of [assailant's] vehicle").

---

[7]  *See*, *Britt*, 120 NM. at 819, 907 P.2d at 1000 ("transportation would be a normal use, whereas use of a parked car for a gun rest would not be.") (citing *Klug*, 415 N.W.2d at 878); *Edwards*, 399 N.W.2d at 98 ("The law requires a "connection" between the use of the vehicle for transportation and the injuries sustained."); *Kastner*, 77 P.3d at 1262 ("Although the term 'use' is broad enough to cover activities beyond mere 'transportation,' it is not so broad as to include acts that are clearly independent of a vehicle's operation.").

11

As a result, Archuleta's actions did not arise out of his use of a vehicle, and Defendants have not succeeded in meeting the last of the *Britt* prongs.

Last, the Court addresses the implication raised by Defendants that there is ambiguity either in the policy or in the use of the *Britt* standard. Defendants do not actually argue this, but the Court can put that notion to rest easily enough. I find no ambiguity either in the language of the policy provision at issue here, or in how courts have applied the *Britt* test. The fact that there are no New Mexico cases which specifically discuss uninsured motorist coverage in the context of sexual assault does not mean that ambiguity exists, especially when other jurisdictions have addressed the issue, and when the *Britt* test can be easily and clearly applied in that context.

## Conclusion

In sum, I find and conclude that there is an insufficient causal nexus between use of Jason Archuleta's vehicle and Jane Doe's injuries, and that the vehicle was not an "active accessory" to the incident under the *Britt* test. The assault occurred independently of the vehicle's operation, and thus Archuleta's acts in this case did not arise out of the "normal use" of a vehicle.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment **(Doc. 30)** is hereby DENIED for the above stated reasons; and

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment **(Doc. 29)** is hereby GRANTED for the above stated reasons.

A Rule 58 Judgment will be entered contemporaneously with this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE